IN THE

# United States Court of Appeals

## FOR THE SEVENTH CIRCUIT

◆ ◆ ◆

INSTITUTO MEXICANO DEL SEGURO SOCIAL,

*Plaintiff-Appellant,*

—v.—

ZIMMER BIOMET HOLDINGS, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION
NO. 3:20-CV-00099-DRL-MGG
HONORABLE DAMON R. LEICHTY

## BRIEF AND REQUIRED SHORT APPENDIX
## FOR PLAINTIFF-APPELLANT

MARK EDWARD MANEY
MANEY & GONZALEZ-FELIX PC
712 Main Street, Suite 2100
Houston, Texas 77002
(713) 806-2500

*Attorneys for Plaintiff-Appellant*

### *Rule 26.1 Disclosure Statement*

This appeal is brought by the Instituto Mexicano del Seguro Social, which is an agency of the Mexican government.

The Instituto Mexicano del Seguro Social is not a corporation.

The firm of Maney & González-Félix, PC was the only law firm that appeared for the Instituto Mexicano del Seguro Social.

## Table of Contents

PAGE

*Rule 26.1 Disclosure Statement* ................................................................ i

*Table of Authorities* .......................................................................... vi

*Statement of Jurisdiction* ................................................................. 1

*Statement of the Issues* .................................................................. 2

*Statement of the Case* .................................................................... 3

    *1.  Nature of the Proceedings* ....................................................... 3

    *2.  Course of Proceedings* ........................................................... 3

    *3.  Statement of Facts* ................................................................ 4

        *A.  IMMS* ....................................................................... 4

        *B.  Zimmer Biomet's History of Bribes* ............................... 5

        *C.  Zimmer Biomet's Bribes in Mexico* ............................... 6

        *D.  Nexus to the United States* ........................................... 8

*Standard of Review* ...................................................................... 11

*Summary of the Argument* .......................................................... 11

*Argument* .................................................................................... 14

    *1.  The United Nations Convention Against Corruption forecloses dismissal for <u>forum non conveniens</u> in this matter* ......... 14

        *A.  This action is controlled by the Convention* ................ 14

           *(1) The Convention is binding* ................................... 14

           *(2) Compensation to State Party victims of corruption is a vital goal of the Convention* .......................... 16

           *(3) IMSS' action is governed by the Convention* ....... 17

B. The UN Convention requires that United States courts be open to foreign State Parties to file civil lawsuits seeking redress for acts of corruption ..................................................... 18

   (1) The lower court misreads the Convention as applying only to initiation of a lawsuit, not its prosecution ............. 18

   (2) The Convention grants State Parties, such as IMSS, the right to raise civil claims for corruption in US courts .................................................................................. 18

C. The lower court's opinion sets a precedent that would result in the dismissal of all civil actions brought pursuant to the Convention ...................................................... 22

   (1) The lower court erred in substituting its judgment of Mexico's interest for Mexico's stated interest ................... 22

   (2) All actions under the Convention necessarily raise the prospect of *forum* _non_ _conveniens_ because they are brought by a foreign State Party about foreign corruption. ....................................................................... 23

   (3) The precedent set in the lower court's opinion would call for the dismissal of all actions brought pursuant to Article 53 because of the foreign State Party's greater interest in enforcing anti-corruption laws ............. 24

D. The district court's opinion sets a dangerous precedent that undermines the Convention by allowing transfers to the courts of the victimized State Party in the interests of convenience ................................................................. 26

2. The lower court failed to properly weight all factors related to the *forum* _non_ _conveniens_ doctrine .............................................. 28

A. Zimmer Biomet wholly failed to meet its burden of proof ......... 29

   (1) Zimmer Biomet proffered no evidence of any inconvenience or burden ..................................................... 29

(2) The lower court erred as a matter of law in dismissing IMSS' action without any evidence of burden or oppression ........................................................ 30

(3) Zimmer Biomet has been sued in its home, which weighs heavily against dismissal ....................................... 32

B. The lower court erred in finding that Mexican courts are available to hear IMSS' claims against Zimmer Biomet ........... 33

C. The lower court failed to adequately weigh the public interest factors ......................................................... 36

(1) The lower court failed to address the policy interests of the United States ........................................... 36

(2) The lower court failed to accept Mexico's expressed statement that it wants to retain its lawsuit here ............... 37

(3) This is a local controversy ............................................... 37

(4) Court congestion does not support dismissal .................... 38

(5) The need to apply Mexican law does not justify dismissal ........................................................... 39

D. The lower court failed to address other issues that should have called for retention of IMSS' action ............................... 40

(1) IMSS had to bring suit in this forum, supporting substantial deference ........................................... 40

(2) Zimmer Biomet is forum shopping ..................................... 42

(3) IMSS is not forum shopping and has legitimate reasons for filing suit here ............................................... 44

E. The lower court did not adequately weight the private interest factors ......................................................... 45

(1) The lower court ignores the evidence of Zimmer Biomet's coordinated activities in Warsaw, Indiana .......... 46

*(2) All of the relevant evidence is in Warsaw Indiana* ............46

*(3) There is limited discovery in Mexico* ................................47

*(4) It is easier to obtain evidence from Mexico for use in the US court than from the US for use in Mexican court* ................................................................................47

*Conclusion* ................................................................................49

**Table of Authorities**

PAGE(S)

## Cases

*Abad v. Bayer Corp.*,
563 F.3d 663 (7th Cir. 2009) ................................................................ 11

*Animal Sci. Products, Inc. v. Hebei Welcome Pharm. Co. Ltd.*,
138 S. Ct. 1865 (2018) ....................................................................... 23

*Asakura v. City of Seattle*,
265 U.S. 332 (1924) ............................................................................ 15

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015) ....................................................................... 8, 43

*Bigio v. Coca–Cola Co.*,
448 F.3d 176 (2d Cir. 2006) .......................................................... 38, 45

*Blanco v. Blanco*,
997 F.2d 974 (2d Cir 1993) .................................................................. 21

*Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*,
145 F.3d 481 (2d Cir. 1998) ................................................................. 43

*In re Bridgestone*,
190 F. Supp.2d 1125 (S.D. Ind. 2002), *aff'd*, 344 F.3d 648
(7th Cir. 2003) .................................................................................... 21

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) .............................................................. 33

*Deb v. SIRVA, Inc.*,
832 F.3d 800 (7th Cir. 2016) ............................................................... 29

*DiFederico v. Marriott Intern., Inc.*,
714 F.3d 796 (4th Cir. 2013) ............................................................... 39

*DiRienzo v. Philip Serv. Co.*,
294 F.3d 21 (2d Cir. 2002) ............................................................. 32, 45

*Duha v. Agrium, Inc.*,
448 F.3d 867 (6th Cir. 2006) .......................................................... 34, 35

*In re Ford Motor Co.*,
  344 F.3d 648 (7th Cir. 2003) ............................................................ 29, 42

*Foster v. Neilson*,
  27 U.S. (2 Pet.) 253 (1829) ............................................................ 15

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1946) ............................................ 13, 28, 30, 32

*In re Hudson*,
  710 F.3d 716 (7th Cir. 2013) ............................................................ 29

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001) ........................................................ *passim*

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947) ............................................................ 30

*In re Livent, Inc. Sec. Litig.*,
  78 F.Supp.2d 194 (S.D.N.Y. 1999) ............................................ 37

*Lony v. E.I. Du Pont de Nemours & Co.*,
  935 F.2d 604 (3d Cir. 1991) ............................................ 13, 31, 32

*Macedo v. Boeing Co.*,
  693 F.2d 683 (7th Cir. 1982) ............................................ 11, 36

*Manu Intern., S.A. v. Avon Products, Inc.*,
  641 F.2d 62 (2d Cir. 1981) ............................................ 39, 40

*Mercier v. Sheraton Intern., Inc.*,
  981 F.2d 1345 (1st Cir. 1992) ............................................ 33, 39

*Mobil Tankers Co., S. A. v. Mene Grande Oil Co.*,
  363 F.2d 611 (3d Cir. 1966) ............................................................ 39

*Norex Petroleum Ltd. v. Access Indust., Inc.*,
  416 F.3d 146 (2d Cir. 2005) ............................................................ 40

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ........................................................ *passim*

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
  329 F.3d 64 (2d Cir. 2003) ............................................................ 40

*Reid-Whalen v. Hansen,*
   933 F.2d 1390 (8th Cir. 1991) ............................................................. 33

*Satyam Computer Services, Ltd. v. Venture Glob. Eng'g, LLC,*
   2006 WL 6495377 (E.D. Mich. July 13, 2006), *aff'd,*
   233 Fed. Appx. 517 (6th Cir. 2007) ..................................................... 38

*Schertenleib v. Traum,*
   589 F.2d 1156 (2d Cir. 1978) .............................................................. 33

*Schexnider v. McDermott Intern., Inc.,*
   817 F.2d 1159 (5th Cir. 1987) ............................................................. 39

*Shi v. New Mighty U.S. Trust,*
   918 F.3d 944 (D.C. Cir. 2019) ....................................................... 33, 41

*Simmtech Co., Ltd. v. Citibank, N.A.,*
   634 Fed.Appx. 63 (2d Cir. 2016) ................................................... 29, 42

*State St. Bank & Tr. Co. v. Inversiones Errazuriz, Limitada,*
   230 F.Supp.2d 313 (S.D.N.Y. 2002) ................................................... 45

*Stroitelstvo Bulg., Ltd. v. Bulgarian–Am. Enter. Fund,*
   589 F.3d 417 (7th Cir. 2009) .............................................................. 34

*Terra Firma Invest. (GP) 2 Ltd. V. Citigroup, Inc.,*
   725 F.Supp.2d 438 (S.D.N.Y. 2010) ....................................... 33, 37, 38

## Statutes

28 U.S.C. § 1291 .................................................................................... 1

28 U.S.C. § 1332(a)(4) ........................................................................... 1

28 U.S.C. § 1782 .................................................................................. 48

False Claims Act .................................................................................... 9

Foreign Sovereign Immunities Act ......................................................... 1

**Other Authorities**

E. Cleary, MCCORMICK'S HANDBOOK ON THE LAW OF EVIDENCE
§ 190, 448-49 (1972)..............................................................44

C. Rose, M. Kubiciel, O. Landwehr, THE UNITED NATIONS
CONVENTION AGAINST CORRUPTION; A COMMENTARY
(Oxford Univ. Press 2019) ..................................................17

Senate Report 109-18, UNITED NATIONS CONVENTION AGAINST
CORRUPTION (TREATY DOC. 109-6) (Aug. 30, 2006) .......... 15, 16, 20, 36

C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 3828..........31

S. Zamora, J.R. Cossio, L. Pereznieto, J. Roldán-Xopa, D. Lopez,
MEXICAN LAW 187 (Oxford 2004) ......................................42

### *Statement of Jurisdiction*

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(4) because this action is between IMSS, a foreign state as that term is defined in the Foreign Sovereign Immunities Act (the FSIA), and Zimmer Biomet, a citizen of the United States.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because this appeal is from a final and appealable order of the district court.

This appeal is timely. Judgment was entered on January 5, 2021. Judgment, A-1. The notice of appeal was filed on February 5, 2021. A-836.

## *Statement of the Issues*

1. Did the lower court err in failing to consider the United Nations Convention Against Corruption in its *forum non conveniens* analysis and in utilizing Mexico's interest in combatting corruption as a reason to dismiss an action brought by Mexico seeking damage for corruption.

2. Apart from the United Nations Convention, did the lower court err in dismissing for *forum non conveniens* without requiring the movant to produce any evidence of burden or inconvenience.

3. Did the lower court err in finding that Mexican courts are available to hear IMSS' claims.

4. Apart from the United Nations Convention Against Corruption, did the lower court adequately weigh all relevant considerations in its *forum non conveniens* analysis.

## Statement of the Case

### 1. Nature of the Proceedings

This appeal addresses whether the lower court correctly dismissed IMSS' lawsuit pursuant to the *forum non conveniens* doctrine.

IMMS, an agency of the Mexican government, sued Zimmer Biomet for damages resulting from Zimmer Biomet's public corruption. As demonstrated in a series of criminal and civil suits brought by the Department of Justice and the Securities and Exchange Commission, for years, Zimmer Biomet used bribery as a marketing tool around the world, including in Mexico and the United States.

The lower court dismissed IMSS' action pursuant to the *foreign non conveniens* doctrine, and this appeal challenges that dismissal on a number of grounds, including that (1) the dismissal violates an applicable United Nations Convention, signed and ratified by the United States and Mexico; (2) the lower court substituted its own judgment as to Mexico's policy interests rather than accepting Mexico's express statements of that interest, and (3) the lower court failed to adequately weigh the relevant considerations.

### 2. Course of Proceedings

Pursuant to the United Nations Convention Against Corruption, IMSS brought suit in this Court seeking compensation from Zimmer Biomet for its confessed corruption. Complaint, A-16.

Zimmer Biomet moved to dismiss, principally on the basis of *forum non conveniens*. Motion, A-24. Notably, Zimmer Biomet did not provide any proof on the issues of burden or inconvenience.

The lower court granted Zimmer Biomet's motion, stating:

> Mexico has a much greater interest in this litigation. IMSS, a Mexican government agency, alleges violations of Mexican law from the sale of medical devices in Mexico that bribes of Mexican customs officials facilitated. The contract at issue was formed in Mexico. Mexican courts have an inherent interest in enforcing Mexican law, in hearing disputes regarding its own government, and in hearing disputes regarding corruption of Mexican officials. *Indeed, it would be a rare case in which Mexico had any greater interest to hear and decide a case than this one*.

Opinion, A-12.

No hearings or argument were had on any matter below.

### 3. Statement of Facts

#### A. IMMS

IMSS is an agency of the Mexican government, acting as the main social-service agency of the Mexican government. IMSS provides health care services to tens of millions of Mexican citizens at hospitals that IMSS owns and operates throughout Mexico. The Mexican government funds IMSS through taxation and compulsory contributions. IMSS also manages the purchases of medical supplies for other Mexican governmental agencies. Complaint, A-18 ¶¶13-14.

*B.  Zimmer Biomet's History of Bribes*

For years, Zimmer Biomet used bribes to sell its products to governmental agencies throughout the world, including within the United States and Mexico. Zimmer Biomet's conduct was international in scope and orchestrated from Zimmer Biomet's corporate offices in Warsaw, Indiana. *Id.* at A-19 ¶18.

Zimmer Biomet's international bribery strategy has been established in a number of actions brought by the DOJ and the SEC. *Id.* at A-19 ¶19.

In 2012, Biomet entered into a deferred prosecution agreement with the DOJ and a settlement agreement with the SEC based on Biomet's illegal bribery in Brazil, China, and Argentina. Zimmer Biomet became bound by those agreements following the merger of Zimmer and Biomet in 2015. As part of its 2012 agreements, Biomet paid a $20.8 million in fines and disgorgements to the United States. Biomet also agreed to a number of internal remedial actions designed to prevent further violations of United States law, including the creation of an independent compliance monitor. *Id.* at A-19 ¶20.

Despite the confessions, the fines, the disgorgements, and the compliance monitor, Zimmer Biomet continued to pay bribes to foreign government officials. *Id.* at A-19 ¶21.

As a result, in 2017, Zimmer Biomet entered into another deferred prosecution agreement with the DOJ and another settlement with the SEC, this time for bribes

paid from at least 2008 through 2013 in Mexico and Brazil. Zimmer Biomet paid more than $30 million in fines and disgorgements for its bribes in Mexico and Brazil. *Id.* at A-20 ¶24.

Zimmer Biomet's use of bribes and kickbacks was not limited to foreign countries. Zimmer Biomet also utilized illicit payments to sell its products in the United States. Prior to their merger, Zimmer and Biomet separately admitted to utilizing the same illicit practices in the United States. Zimmer and Biomet paid nearly $200 million in fines and forfeitures to resolve these charges. *Id.* at A-20 ¶23.

According to its agreements with the US government, Zimmer Biomet cannot deny its illegal conduct. In both the 2012 and 2017 deferred prosecution agreements with the DOJ, Zimmer Biomet agreed that it would not "make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility" for its illegal conduct and the conduct of its agents. Zimmer Biomet is also bound by the SEC agreements that resulted in final administrative orders. *Id.* at A-20 ¶24.

*C. Zimmer Biomet's Bribes in Mexico*

In Mexico, between at least 2008 and 2013, Zimmer Biomet knowingly paid bribes to Mexican government officials to facilitate the sale of products to and through IMSS. *Id.* at A-20 ¶25.

From 2008 through 2013, Zimmer Biomet paid about $1 million to its Mexican agents, who acted as bagmen for passing on bribes to Mexican government

officials. The bribes were paid so Zimmer Biomet could illegally smuggle unregistered medical products into Mexico so the unregistered products could be sold to IMSS. *Id.* at A-20 ¶26.

Zimmer Biomet controlled the international scheme from its headquarters in Warsaw, Indiana. *Id.* at A-20 ¶27.

Zimmer Biomet made millions from its bribes in Mexico. Zimmer Biomet has confessed to directly receiving $2,652,100 in illicit profits through its Mexican bribery scheme, but Zimmer Biomet received far more indirectly. *Id.* at A-21 ¶30.

To obtain government contracts with IMSS, Zimmer Biomet was legally required to represent that it had and was complying with all legal requirements for the sale of medical equipment to IMSS and within Mexico. Zimmer Biomet made the required representations, but its statements were manifestly false. With each additional contract, Zimmer Biomet represented that it had and would comply with Mexican law. Following the first bribes and illegally imported products, those representations were false. IMSS relied on Zimmer Biomet's false, material statements and omissions in order to consummate business transactions with Zimmer Biomet. Absent the false representations, IMSS would have been legally barred from contracting with Zimmer Biomet. *Id.* at A-21 ¶31.

In addition, Zimmer Biomet bribed Mexican government officials so Zimmer Biomet could smuggle unregistered medical products into Mexico and sell the

unregistered medical products to IMSS. The sale of unregistered devices was and is illegal in Mexico. IMSS could not have knowingly purchased unregistered medical devices. *Id.* at A-21 ¶32.

### D. Nexus to the United States

The lower court's opinion leaves the impression that this action has little connection to the United States, but the truth is that this action follows a series of legal actions in United States courts, all related to similar illicit conduct managed by Zimmer Biomet from its Indiana headquarters. Indeed, it is the effect of those actions that Zimmer Biomet seeks to avoid by having this action sent to Mexico.

For example, in its motion to dismiss, Zimmer Biomet made the insupportable assertion that "IMSS's claims completely lack merit" and that Zimmer Biomet plans to "refute IMSS's allegations" if this action proceeds on the merits. Memorandum in Support of Motion to Dismiss ("Memorandum"), A-33, A-34 n.2. IMSS' allegations, however, track the allegations set out in (1) the final SEC Order detailing Zimmer Biomet's Mexican bribes, A-536, and (2) the deferred prosecution agreement between the DOJ and Zimmer Biomet, A560. *Compare* Complaint, A-16. The SEC Order is *res judicata*,[1] and, in the deferred prosecution agreement, Zimmer Biomet expressly agreed that it would not "make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility … or the facts

---

[1] *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148–49 (2015).

described in the Statement of Facts." A-577-78 (deferred prosecution agreement). Zimmer Biomet's contradictory statements violate that agreement with the United States government. In addition, it is unlikely that Zimmer Biomet agreed to pay tens of millions of dollars in fines and forfeitures based on allegations that "completely lack merit."

This action follows eight related actions brought by US authorities addressing Zimmer Biomet's global bribery practices orchestrated out of its Warsaw, Indiana headquarters:

- o In 2007, Zimmer faced criminal charges in the United States District Court for the District of New Jersey for using kickbacks to sell its products to Medicare and Medicaid patients. A-627.[2]

- o In 2007, Biomet also faced criminal charges in the United States District Court for the District of New Jersey for its independent use of kickbacks to sell its products to Medicare and Medicaid patients. A-717.

- o In 2012, Biomet faced criminal charges in the United States District Court for the District of Columbia for bribes it paid to government officials in Latin America and China. A-722.

- o In 2012, Biomet faced a SEC civil complaint in the United States District Court for the District of Columbia for bribes Biomet paid to government officials in Latin America and China. A-752.

- o In 2014, Biomet settled a civil suit filed by the DOJ in United States District Court for the District of New Jersey under the False Claims Act for Biomet's use of kickbacks to sell dental implants in the United States. A-768.

---

[2] Zimmer and Biomet merged in 2015 to become Zimmer Biomet.

- o In 2017, Zimmer Biomet faced criminal charges in the United States District Court for the District of Columbia for bribes paid to government officials in Mexico and elsewhere. A-560.

- o In 2017, Zimmer Biomet faced an administrative proceeding filed by the SEC relating to the same conduct in Mexico and elsewhere. A-536.

- o In 2019, the SEC awarded a multi-million-dollar whistleblower award to a Brazilian citizen who first reported Zimmer Biomet's bribes in that country. A-782.

None of these actions was dismissed as unnecessarily burdensome to Zimmer Biomet or the domestic courts.

In the context of the *forum non conveniens* doctrine, it also deserves mention that Zimmer Biomet received a reduction in its fines because it had gathered and provided "all relevant facts known to it, including information about individuals involved in the misconduct" and had cooperated with US authorities by "voluntarily making employees available for interviews, and collecting, analyzing, and organizing voluminous evidence and information for the Fraud Section…." A-564 (deferred prosecution agreement). Thus, all relevant information is already available in the United States.

Zimmer Biomet wants to avoid the legal effect of these multiple legal actions and its confessions by having this action moved to Mexico. Unfortunately, the lower court allowed Zimmer Biomet to do just that.

### Standard of Review

The lower court's ruling on *forum non conveniens* is reviewable under an abuse of discretion standard. *Abad v. Bayer Corp.*, 563 F.3d 663, 665–66 (7th Cir. 2009). It is therefore affirmable unless the court committed a demonstrable factual error or an error of law. *Id.* An abuse of discretion can also be found if the lower court failed to weigh all relevant matters. *Macedo v. Boeing Co.*, 693 F.2d 683, 691 (7th Cir. 1982).

### Summary of the Argument

The lower court's dismissal of IMSS' anti-corruption lawsuit on the basis of *forum non conveniens* was based on a number of errors.

First, the dismissal contravenes the provisions of the United Nations Convention Against Corruption (the "Convention"), which has been in effect since 2005. The Convention requires the United States to open its courts to State Parties like IMSS to bring civil actions for damages caused by corrupt activities like Zimmer Biomet's bribery. The lower court, however, ruled that the Convention was irrelevant to its *forum non conveniens* analysis and dismissed IMSS' action because the Court believed that Mexico has a far greater interest in this action than does the United States. Opinion, A-14. The lower court's conclusion vitiates the Convention's requirement that the United States allow actions such as IMSS because, by definition the Convention only applies to actions brought by foreign

State Parties related to corruption in foreign countries, and in all such cases, as the lower court noted, the victimized nation will have a greater interest than the United States. Moreover, the lower court's chief reason for apply the doctrine—that Mexico's policy interests are best served by dismissal—ignores Mexico's own statement (through IMSS) that it wants this lawsuit brought here pursuant to the Convention. When the lower court substituted its own judgment for the that of the Mexican government, it erred and violated both the Convention and principles of international comity. The lower court's failure to apply the Convention led it to the bizarre conclusion that Mexico's interests are best served by dismissing Mexico's lawsuit from its chosen forum in the face of Mexico's stated opposition to that dismissal. The lower court does not explain why it knows better than the Mexican government where Mexico's interests lie and what forum best serves Mexico's interests, and in any event, the policy consideration is foreclosed by the UN Convention.

The lower court's dismissal of the Convention sets a dangerous precedent that undermines a significant international treaty combating corruption. The lower court's failure to address the importance of the Convention also undermined its balancing of the *forum non conveniens* factors. The Convention expressly allows for IMSS' suit, so the lower court should have granted far more deference to IMSS' choice than it did. In a similar manner, the lower court's refusal to apply the

Convention places State Parties in a dilemma—publicly challenge the competency of the State Party's own courts (and thereby put at risk the State Party's entire legal system) or accept a transfer to courts that may be corrupted by a party that has already shown the capacity and predisposition to act corruptly. Although there is no question of the competency of Mexican courts, the entire purpose of the Convention was to establish a framework that avoids such impossible choices.

Second, the lower court erred by not holding Zimmer Biomet to its burden of proof. Zimmer Biomet presented *no* evidence that it would suffer any burden from defending itself here. As a result, Zimmer Biomet wholly failed to meet its burden to support a dismissal for *forum non conveniens.* Ignoring the lack of proof led the lower court to adopt a position the United States Supreme Court found "strange"[3] and that the Third Circuit found so "puzzling" that it invoked ALICE IN WONDERLAND;[4] that is, that it would have been unduly burdensome for Zimmer Biomet to defend this action in its hometown. Instead, the lower court held that it would be far more convenient for Zimmer Biomet to defend itself in Mexican courts, in Spanish, with counsel it has hired for the first time.

Third, the lower court erred when it held that Mexican courts are available simply because Zimmer Biomet assented to jurisdiction in Mexico, even though it is

---

[3] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 510 (1946).

[4] *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 608 (3d Cir. 1991).

undisputed that, because of a series of investment treaties between the United States and Mexico, Mexican courts historically will not address claims against foreign parents of Mexican subsidiaries—the claims brought by IMSS. Opinion, A-5.

Fourth, the lower court erred in not properly weighing the public and private interest factors. The lower court's analysis fails to address adequately the international scope of Zimmer Biomet's bribery scheme, which caused the SEC and the DOJ to initiate at least eight federal actions against Zimmer Biomet entities, demonstrating a clear interest of the United State in this matter. Mexico has also directly expressed its interest in this lawsuit—Mexico filed it.

Ultimately, the lower court failed to see that Zimmer Biomet is forum shopping here, not IMSS. Clearly, Zimmer Biomet's goal is not convenience, but inconvenience. Zimmer Biomet prefers to defend this action where resolution will be delayed the longest and where Zimmer Biomet can avoid compelling proof of its wrongs.

## Argument

1. *The United Nations Convention Against Corruption forecloses dismissal for forum non conveniens in this matter.*

   A. *This action is controlled by the Convention.*

      (1) *The Convention is binding.*

The United Nations Convention against Corruption came into force in December 2005 when representatives of 120 different nations gathered in Merida,

Mexico to sign the agreement. To date, 187 State Parties, including both the United States and Mexico, have ratified the Convention.[5]

The Convention was the first and remains the only binding multinational treaty targeting corruption. In supporting ratification, the United States Senate reported that the Convention "is designed to prevent and suppress corruption, promote integrity and accountability, and facilitate international cooperation and technical assistance to prevent and combat corruption and to recover assets." Senate Report 109-18, UNITED NATIONS CONVENTION AGAINST CORRUPTION (TREATY DOC. 109-6) (Aug. 30, 2006) ("Senate Report") at 1.

As stated by Chief Justice Marshall, treaties are "the law of the land … to be regarded in courts of justice as equivalent to an act of the legislature, whenever it operates of itself, without the aid of any legislative provision." *Foster v. Neilson*, 27 U.S. (2 Pet.) 253, 313–14 (1829). Therefore, as noted by the US Senate, the Convention's provisions are "legally binding." Senate Report at 1; *see also Asakura v. City of Seattle*, 265 U.S. 332, 341 (1924).

The United States ratified the Convention with the express statement that no implementing legislation was required to bring the United States into compliance with its obligations. The Senate Report recommending ratification states: "No implementing legislation is required for the Convention. An existing body of federal

---

[5] See https://www.unodc.org/unodc/en/corruption/uncac.html.

and state laws will suffice to implement the obligations of the Convention…." Senate Report at 6.

The fact that no implementing legislation was required does not mean that the Convention does not affect United States law. The Senate Report explains that, even though implementing legislation was not required, the Convention nonetheless alters United States law. For example, the Senate Report notes: "For the United States, the Convention will not create new extradition relationships, but it will broaden some of our older existing treaties by expanding their scope to include the offenses described in the Convention." *Id*. at 14 (Statement of S. M. Witten, Dep. Legal Adviser, US Department of State).

As explained immediately below, to ensure compliance with the Convention, United States courts need to apply existing doctrines (especially discretionary doctrines such as *forum non conveniens*) in light of the Convention's requirements.

> (2)    *Compensation to State Party victims of corruption is a vital goal of the Convention.*

Compensation to State Parties victimized by corruption is a vital goal of the Convention. The United Nations Legislative Guide to the Convention states: The Convention includes a "mandate to ensure access to compensation and restitution for victims of offences established in accordance with the Convention." Legislative Guide at ¶ 458. "For these goals, as well as those of ensuring that justice is meted out and offenders are prevented from enjoying the fruits of their misconduct,

measures designed to locate and seize proceeds of crime, alongside compensation for damages, are vital." Legislative Guide ¶ 315.

As one commentator noted, "This innovative provision departs from the notion that proceeds from corruption should be recovered primarily by way of confiscation and *obliges states parties to recognize in their legal systems the right of harmed states to seek direct recovery through private civil actions* for the return of property, compensation, or damages." C. Rose, M. Kubiciel, O. Landwehr, THE UNITED NATIONS CONVENTION AGAINST CORRUPTION; A COMMENTARY at 536 (Oxford Univ. Press 2019) (emphasis added).

### (3) IMSS' action is governed by the Convention.

Without question, Zimmer Biomet's bribery of IMSS' officials falls within the confines of the UN Convention. The lower court concurred, holding, "IMSS is a 'State Party,' this is a 'civil action,' IMSS is seeking to establish ownership of property, and IMSS says Zimmer Biomet acquired property through bribery—a corrupt act under UNCAC." Opinion, A-14.

Although the lower court correctly held the Convention applies to IMSS' action, it also held that the Convention had no bearing on the issue of *forum non conveniens.* Opinion, A-14. That conclusion deals a heavy blow to the Convention's viability.

B. *The UN Convention requires that United States courts be open to foreign State Parties to file civil lawsuits seeking redress for acts of corruption.*

(1) *The lower court misreads the Convention as applying only to initiation of a lawsuit, not its prosecution.*

The lower court's conclusion that the Convention has no bearing on its *forum non conveniens* analysis initially depends on the lower court's misinterpretation of the Convention as limited to the initiation of a lawsuit. Thus, the district court held that the Convention "only requires United States courts [to allow] another state party to initiate an action. IMSS had that right and exercised that right—consistent with the UNCAC. IMSS filed suit here…." Opinion, A-14.

Based on this faulty analysis, the district court concluded, "In applying *forum non conveniens*, the court hasn't interfered with IMSS' *ability to commence an action* here." Opinion, A-14 (emphasis added).

The Convention, however, requires that the United States do far more than merely allow State Parties to file meaningless lawsuits in its courts.

(2) *The Convention grants State Parties, such as IMSS, the right to raise civil claims for corruption in US courts.*

The Convention's right to seek compensation in US courts is substantive, not symbolic, so the lower court erred in finding the Convention irrelevant to its *forum non conveniens* analysis. Although the lower court purports to quote the Convention when it concludes that the "UNCAC only requires United States courts to 'take such measures as may be necessary' for another state party to initiate an action," the lower

court's purported quotation from the Convention omits the critical words at end of the Article 35. Opinion, A-14. The complete Article 35, entitled "*Compensation for damage*," reads as follows:

> Each State Party shall take such measures as may be necessary, in accordance with principles of its domestic law, to ensure that entities or persons who have suffered damage as a result of an act of corruption have the right to initiate legal proceedings against those responsible for that damage *in order to obtain compensation.*

Convention Art. 35 (emphasis added).

The lower court also erred slightly in referencing Article 35, which opens United States courts to all victims of corruption ("persons who have suffered"), not only State Parties.

Article 53, which deals specifically with actions brought by State Parties, such as IMSS, directly requires United States courts provide substantive remedies to State Party victims of corruption. Article 53, entitled, "*Measures for direct recovery of property*," states, in pertinent part, "Each State Party shall, in accordance with its domestic law … Take such measures as may be necessary to permit its courts *to order those who have committed offences established in accordance with this Convention to pay compensation or damages* to another State Party that has been harmed by such offences." Convention Art. 53 (emphasis added). Discretionary dismissal of actions brought by State Parties violates Article 53.

No reasonable reading of Article 53 limits that provision to the filing of lawsuits. The Convention's Legislative Guide is equally emphatic: "States parties must take necessary measures *to permit their courts to order those who have committed offences established in accordance with the Convention to pay compensation or damages* to another State party that has been harmed by such offences." Legislative Guide at ¶ 713 (emphasis added). "In order to implement this provision, States parties must allow other State parties *to stand before their courts and claim damages*; how they meet this obligation is left to the States parties." Id. at ¶ 714 (footnote omitted; emphasis added).

In ratifying the Convention, the United States Senate acknowledged the Convention's requirement that United States courts be open to State Parties so they can seek compensation (not merely file a meaningless lawsuit). The Senate Report outlining the obligations accepted by the United States notes: "Article 53 requires each Party to allow other Parties to bring civil actions in its courts to recover property and to enable courts to award damages…." Senate Report at 5. The United Nation conducts surveys of State Parties to ensure compliance with the Convention. In doing so, the United Nations does not ask merely whether parties to the Convention allow State Parties to initiate futile lawsuits, but instead whether parties have taken measures "to ensure that entities or persons who have suffered damage as a result of an act of corruption have the right to initiate legal proceedings against those

responsible for that damage in order to obtain compensation"? USA UNCAC Self-Assessment at 170 (7/10/2010).[6] The United States answered that question in the affirmative, stating,

> Victims of corruption may obtain compensation for their losses by bringing private actions in state or federal court against the responsible persons or institutions, providing the victims can prove that they suffered damages as a result of the corruption. These lawsuits may be common-law actions or statutory-based and can be premised on fraud, contract, tort, or civil-rights theories. In addition, common law permits rescission of fraudulently obtained contracts in certain instances.

*Id*. at 171.

Since the right to seek compensation is substantive, the district court erred in not conforming its *forum non conveniens* analysis to the Convention's requirements. The *forum non conveniens* doctrine is one of discretion, so it should be easily adaptable to changing policy considerations such as in the historic Convention. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).[7]

---

[6] Available at https://2009-2017.state.gov/documents/organization/158105.pdf.

[7] The lower court also misinterprets the existing precedent applying treaty obligations in a *forum non conveniens* analysis. *See* Opinion, A-14-15. The cited opinions discuss treaties of friendship that require the courts of the respective nations to grant equal access to their courts to each other's citizens. In contrast to the lower court's conclusions, these opinions do require district courts to alter their *forum non conveniens* analysis by granting the forum choice of such citizens heightened deference. *See id*.; *see also In re Bridgestone*, 190 F. Supp.2d 1125, 1136 (S.D. Ind. 2002), *aff'd*, 344 F.3d 648, 653 (7th Cir. 2003); *Blanco v. Blanco*, 997 F.2d 974, 981 (2d Cir 1993). The Convention's requirements are far stronger and more direct than the obligations in the treaties of friendship.

*The lower court's opinion sets a precedent that would result in the dismissal of all civil actions brought pursuant to the Convention.*

The lower court's error in applying the Convention goes beyond its conclusion that the Convention's requirements end after the filing of a lawsuit. The lower court ultimately utilized the very goals of the Convention to undermine it and to render the Convention illusory.

    *(1)* *The lower court erred in substituting its judgment of Mexico's interest for Mexico's stated interest.*

The lower court begins by correctly noting that Mexico's interest in this lawsuit is "much greater" than the United States because Mexico has a greater interest in "rooting out corruption in its own government." Opinion, A-13. The court held that "Mexico has a strong interest in having this dispute adjudicated in a Mexican court," which "strongly weighs in favor of dismissal." Opinion, A-14.

The lower court, however, then leaps the conclusion that, therefore, the "public interest factors thus overwhelmingly support this case's dismissal in favor of a Mexican venue." Opinion, A-13. The problem with the lower court's conclusion is that Mexico expressly stated its interest—Mexico (through its governmental agent, IMSS) invoked the Convention and brought suit here, not in Mexico. The lower court erred when it substituted its own judgment of Mexico's policy interests for Mexico's stated interest. In the face of Mexico's clear and actual choice to invoke the Convention's provisions and to file suit in the United States, the lower court

holds that Mexico actually wants this action heard in Mexico, not the United States. With all due respect, the lower court it is not the lower court's role to alter the stated policy of the Mexican government.

Based on principles of international comity, as well as the Convention, the lower court should have at least accorded Mexico's stated policy interests "respectful consideration" and not substituted its own version of that interest. *Animal Sci. Products, Inc. v. Hebei Welcome Pharm. Co. Ltd*., 138 S. Ct. 1865, 1869 (2018).

> (2) *All actions under the Convention necessarily raise the prospect of forum non conveniens because they are brought by a foreign State Party about foreign corruption.*

Every action brought by a State Party for civil compensation under the Convention's purview necessarily raises the prospect of *forum non conveniens*. In each such case, as explained in the Legislative Guide, "the State would be a plaintiff in a civil proceeding." Legislative Guide at ¶ 712. And, in each such case, the State Party is of necessity a foreign sovereign entity that could have filed the lawsuit in its own courts, but decided to file instead in the home court of the offending parties.

Thus, if the district court is correct that application of the *forum non conveniens* doctrine is unaffected by the Convention's requirements then those requirements mean little because, as the lower court held, the local courts of the foreign State Party will always have a greater interest in the corruption claims brought in the lawsuit than the US courts. *See* The court held that "Mexico has a

strong interest in having this dispute adjudicated in a Mexican court," which "strongly weighs in favor of dismissal." Opinion, A-14.

> (3)    *The precedent set in the lower court's opinion would call for the dismissal of all actions brought pursuant to Article 53 because of the foreign State Party's greater interest in enforcing anti-corruption laws.*

The core purpose of the Convention is to combat corruption, yet the lower court uses that stated purpose to base its dismissal of IMSS' action brought pursuant to the Convention. While the lower court's opinion acknowledges Mexico's strong interest in combating corruption affecting its vital governmental interests, it wholly fails to respect Mexico's choices regarding how to protect those interests, particularly within the constraints of the Convention. To the contrary, the lower court was clear—it dismisses Mexico's lawsuit on the basis of its finding that Mexico has a "much greater interest" in IMSS' claims than the United States. The court held that "Mexico has a strong interest in having this dispute adjudicated in a Mexican court," which "strongly weighs in favor of dismissal." Opinion, A-12. In the court's words, "Indeed, it would be a rare case in which Mexico had any greater interest to hear and decide a case than this one." The court held that "Mexico has a strong interest in having this dispute adjudicated in a Mexican court," which "strongly weighs in favor of dismissal." Opinion, A-12.

In pursuing its vital public interest in combating corruption, Mexico chose to file suit here, in a United States court. It cannot serve Mexico's interests to ignore

that policy choice and send this important action elsewhere. Ultimately, the lower court's conclusion is perverse, using Mexico's manifest interest as a rationale for undoing Mexico's expressly stated interest in filing suit here and its stated interest in ratifying the Convention that authorizes this lawsuit. The district court does not even afford Mexico's choice of forum with a heightened deference.

The district court simply errs when it states, "Nothing within [the Convention's] plain language seeks to accomplish the opposite goal of undoing U.S. domestic law in such a way as to secure in every case the right to bring suit here, not least in a case where Mexico has a manifest interest in protecting its government from alleged foreign corporate influence." Opinion, A-14. The United States, Mexico, and 160 other nations have promised to respect their individual choices in such matters and to open their courts for exactly this type of action—that is, actions "protecting [their] government[s] from alleged foreign corporate influence."

The lower court therefore sets a precedent that vitiates the Convention's protections. The lower court's analysis would apply to every civil action brought by a State Party, and in every such case, would call for dismissal.

This Court need not hold that the Convention bars any application of the *forum non conveniens* doctrine to a suit that arises under the Convention, but certainly Mexico's interest in this action should not be used to undermine an action brought by Mexico. It is at least conceivable that, even in an action covered by the

Convention, a State Party might choose a forum to intentionally harass and burden a defendant. Absent evidence of a such a forum shopping motive, however, the Convention should apply.

There is certainly no evidence that IMSS chose Indiana to harass Zimmer Biomet. Indiana is Zimmer Biomet's home. At a minimum, therefore, the lower court should have considered the interests stated in the Convention as part of its analysis and should have required Zimmer Biomet to show some equally compelling burden to defending a suit in its home.

> D. *The district court's opinion sets a dangerous precedent that undermines the Convention by allowing transfers to the courts of the victimized State Party in the interests of convenience.*

The lower court's opinion also sets a dangerous precedent that places State Parties in a dilemma—either publicly challenge the competency of the State Party's own courts (and thereby put at risk the State Party's entire legal system) or accept a transfer to courts that may be corrupted. As the lower court noted, a dismissal for *forum non conveniens* depends on the availability of an adequate alternative forum. Opinion, A-3.

State Parties, however, are rarely if ever going to be in a position that they can challenge the competency or integrity of their own domestic courts. A victimized State Party should not be placed in the difficult position of having to challenge its own courts simply to invoke the Convention's protections. Even if a State Party were

willing to make such a challenge, the challenge itself would undermine the State Party's judicial system and the confidence of the State Party's own citizens in that system. IMSS, of course, does not question the competency or integrity of Mexico's courts, but the entire purpose of the Convention was to establish a framework that avoids such impossible choices.

Allowance of *forum non conveniens* dismissals against the expressed interest of the victimized State Party, therefore, directly defeats the Convention's purposes. A person or company that is charged with suborning government officials of a State Party should not be allowed the opportunity to avoid liability for that corruption by repeating the same nefarious activity. In this matter, for example, Zimmer Biomet has conclusively demonstrated its willingness and ability to corrupt Mexican government officials in their function of critical duties, yet the lower court's precedent would send lawsuits against Zimmer Biomet to courts in Brazil and China, which might allow Zimmer Biomet another chance at corrupting Mexican government officials.

When a victimized State Party decides (for whatever reason) that its interests are best served by recourse to foreign courts pursuant to the Convention, that decision should be given the highest respect. Indeed, the fact that a sovereign would decide it is better served by seeking justice abroad rather than in its own courts is, at least in most cases, a compelling justification for the Convention's requirements. It

is equally telling that a corrupt entity like Zimmer Biomet would rather defend itself in the courts of a far-off nation that it victimized than in the courts of its home. *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74 (2d Cir. 2001) (courts should be skeptical of defendant's reasons for wanting a transfer).

Under the Convention, State Parties are not be put to the impossible choice between challenging the competency of their own tribunals or allowing transfer back home.

2. *The lower court failed to properly weight all factors related to the <u>forum</u> <u>non conveniens</u> doctrine.*

This Court need not reach the lower court's general application of the *forum non conveniens* doctrine if it determines that the Convention applies. Even apart from its failure to apply the Convention's requirements, however, the lower court erred in dismissing for *forum non conveniens*.

In this regard, it might be time to recognize that times have changed since the Supreme Court affirmed use of the *forum non conveniens* doctrine in federal courts. In 1947, the Court noted that while the *forum non conveniens* "doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses." *Gulf Oil*, 330 at 508. Today, overworked, district courts are far more willing to avoid further burdens on their courts.

*A. Zimmer Biomet wholly failed to meet its burden of proof.*

    *(1)    Zimmer Biomet proffered no evidence of any inconvenience or burden.*

Zimmer Biomet had the burden of persuasion and proof on all elements supporting its request for dismissal for *forum non conveniens*. *In re Ford Motor Co.*, 344 F.3d 648, 652 (7th Cir. 2003) (citations omitted). This Court holds that a "defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *In re Hudson*, 710 F.3d 716, 718 (7th Cir. 2013) (internal quotation marks omitted). Quoting the Supreme Court in *Gulf Oil*, this Court has cautioned that the doctrine should be applied only in "exceptional circumstances," and "rather rare cases." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016) (quoting *Gulf Oil*, 330 U.S. at 509). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id*. at 806 (citing, *Gulf Oil*, 330 U.S. at 504).

According to the Supreme Court precedent, Zimmer Biomet had the burden to prove (1) that "trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or on the court," and (2) that "the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft*, 454 U.S. at 249; *see also Simmtech Co., Ltd. v. Citibank, N.A.*, 634 Fed.Appx. 63, 64-65 (2d Cir. 2016) (South Korean plaintiff, New York defendant; reversing dismissal for *forum non*

*conveniens* because defendant had not "demonstrated genuine inconvenience and a clear preferability of the foreign forum").

Yet, Zimmer Biomet placed *no* proof in the record that Zimmer Biomet would be burdened by this action in this forum. Zimmer Biomet's proof consisted entirely of its self-serving consent to jurisdiction in Mexico and a declaration on Mexican law. Exhibits to Memorandum, A-24. In other words, Zimmer Biomet presents two declarations on *legal* issues, but provides no *factual proof* on burden or inconvenience.

> (2)   *The lower court erred as a matter of law in dismissing IMSS' action without any evidence of burden or oppression.*

The failure of proof should have been fatal to Zimmer Biomet's motion. In its two seminal opinions on *forum non conveniens*, the Supreme Court noted the importance of *evidence* of inconvenience. In *Koster*, the Court noted that, "Confronted with defendant's motion and supporting affidavits in this case reciting the facts earlier set forth herein, the plaintiff was utterly silent as to any reason of convenience to himself or to witnesses and as to any advantage to him in expense, speed of trial, or adequacy of remedy if the case were tried in New York." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 531 (1947). In *Gulf Oil,* the Court affirmed dismissal because the plaintiff's "affidavits and argument are devoted to controverting claims as to defendant's inconvenience, rather than to showing that the present forum serves any convenience." *Gulf Oil*, 330 U.S. at 509. This action is

the opposite. Zimmer Biomet, the movant, failed entirely to proffer evidence of any convenience from moving this action from Zimmer Biomet's home to another country.

The reason for the failure of proof is obvious: IMSS sued Zimmer Biomet at its home, not in some foreign jurisdiction. There is nothing inconvenient about being sued at home. The "primary danger against which the doctrine guards is the plaintiff's 'temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself,' so that he can '"vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy.'" *Lony*, 935 F.2d at 615 (quoting, *Gulf Oil*, 330 U.S. at 507, 508). Thus, the *forum non conveniens* doctrine is designed to prevent plaintiffs from suing defendants far from home, not to prevent suits in their homes. "Although the doctrine frequently is discussed in terms of 'convenience,' it probably is better thought of as a doctrine about avoiding 'undue burden.'" C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 3828.

While Zimmer Biomet (and the district court) purported to examine the Supreme Court's list of factors to be considered, Zimmer Biomet proffered no *evidence* related to those criteria or that established that Zimmer Biomet would suffer any inconvenience from suit in Indiana. In fact, it appears the lower court

altered the legal rule. The lower court states, "Zimmer Biomet carries the burden of overcoming this presumption favoring a plaintiff's choice, and it is *often* a 'heavy' one." Opinion, A-3 (emphasis added). The court's insertion of the word "often" appears to be its own invention; that vague qualifier does not appear in any of this Court's or the Supreme Court's precedent.

Since Zimmer Biomet did not present any evidence of burden or inconvenience, this Court need not reach the issue of how burdensome suit must be to justify dismissal for *forum non conveniens*. Absent proof of burden or inconvenience, the dismissal was error. *See DiRienzo v. Philip Serv. Co.*, 294 F.3d 21, 30 (2d Cir. 2002) ("[T]he district court committed a legal error by failing to hold defendants to their burden of proof.").

> (3) *Zimmer Biomet has been sued in its home, which weighs heavily against dismissal.*

The lower court accepted, without proof, Zimmer Biomet's assertion of undue burden from suit in its home district. The Supreme Court in *Gulf Oil*, however, found such a claim "a strange argument." *Gulf Oil*, 330 U.S. at 510. The Third Circuit in *Lony v. E.I. Du Pont de Nemours & Co.* found it "puzzling" when Du Pont sought to give up its home-court advantage in favor of a foreign forum, noting, "Du Pont . . . seeks to move the action against it to a forum more than 3,000 miles away. It is, as Alice said, 'curiouser and curiouser.'" 935 F.2d at 608. The lower court did not address this portion of *Gulf Oil* or the opinion in *Lony*.

In keeping with these observations, it is uniformly held that, when a "forum resident seeks dismissal, this fact should weigh strongly against dismissal." *Reid-Whalen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991); *see also Schertenleib*, 589 F.2d at 1164 ("We begin by noting that plaintiff chose this forum and defendant resides here. This weighs heavily against dismissal."); *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1229 (9th Cir. 2011); *Shi*, 918 F.3d at 950 ("Furthermore, the Trusts were sued in their home jurisdiction, which weighs heavily against dismissal."); *Mercier v. Sheraton Intern., Inc.*, 981 F.2d 1345, 1354 (1st Cir. 1992) ("The deference accorded the plaintiff's choice of forum is enhanced when the plaintiff has chosen a forum in which the defendant maintains a substantial presence.") (multiple citations omitted); *Terra Firma Invest. (GP) 2 Ltd. V. Citigroup, Inc.*, 725 F.Supp.2d 438, 442-43 (S.D.N.Y. 2010) ("Three of the four Citi defendants are located in New York, and thus can hardly complain that being sued in their home location is an inconvenience.").

The lower court erred in failing to address this issue.

> B.    *The lower court erred in finding that Mexican courts are available to hear IMSS' claims against Zimmer Biomet.*

As part of the Mexican government, IMSS conceded, and the lower court found, that Mexican courts are competent to address complex commercial matters, but competency is not the issue. Opinion, A-4. The lower court failed to adequately address IMSS' contention that, while competent, Mexican courts are not *available*

to hear IMSS' claims against Zimmer Biomet because Mexican courts will not generally address the responsibility of foreign parents of Mexican agents.

To support dismissal, Zimmer Biomet had to prove that "*the claim can be heard* in an available and adequate alternative forum." *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006) (emphasis added); *see also Piper Aircraft*, 454 U.S. at 255 ("[D]ismissal would not be appropriate where the alternative forum does not permit litigation *of the subject matter of the dispute*.") (emphasis added); *Stroitelstvo Bulg., Ltd. v. Bulgarian–Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009) ("In other words, adequacy is determined by whether the foreign forum will provide "some potential avenue for redress for the subject matter of the dispute.").

Zimmer Biomet failed to provide that proof. Zimmer Biomet's provided expert testimony that, based on Zimmer Biomet's concession to jurisdiction, Mexican courts would accept the filing of IMSS' claim, but IMSS' evidence that Mexican courts generally refuse to entertain claims against foreign parents of Mexican subsidiaries was uncontested. *See* Opinion, A-4; Opposition to Motion to Dismiss, A-414.

In light of several US-Mexican investment treaties that authorize foreign corporations to operate in Mexico through subsidiaries, Mexican courts are historically reluctant to judge the foreign parents of Mexican corporations based on their control of those subsidiaries. IMSS Expert, A-427-28, ¶¶12-14. Therefore,

although Zimmer Biomet concedes personal jurisdiction, it is unlikely that "*the claim can be heard* in an available and adequate alternative forum." *Duha*, 448 F.3d at 873; IMSS Expert, A-427-28, ¶¶12-14. Zimmer Biomet failed to provide any proof on the availability of Mexican courts *to hear IMSS's claims against Zimmer Biomet*. Zimmer Biomet's legal expert spent pages stating that a Mexican court would accept jurisdiction over Zimmer Biomet based on its concession to that jurisdiction but says nothing about whether that Mexican court would entertain IMSS' claims against Zimmer Biomet for the acts of its Mexican agents. Zimmer Biomet's expert opinion that Mexican courts will accept jurisdiction based on Zimmer Biomet's consent and are competent does not establish this threshold requirement.

The lower court addressed this argument as if IMSS were merely complaining that Mexican law would be less favorable, but that too is not the issue. *See* Opinion, A-5. In fact, as the lower court noted, Mexican law would apply to IMSS' claims in a United States court. *Id*.

The issue is whether there is a Mexican forum *available* to address IMSS' claims against Zimmer Biomet as opposed to Zimmer Biomet's Mexican subsidiary and agents. On that issue, the evidence was uncontroverted. Mexican courts abide by Mexico's treaties with the United States and do not historically address such claims.

On the other hand, in this country, Zimmer Biomet entered into a deferred prosecution agreement that prevents it from denying its responsibility for the actions of its Mexican agents. In Mexico, Zimmer Biomet can likely avoid any liability. The lower court did not address this critical distinction.

C.     *The lower court failed to adequately weigh the public interest factors.*

Again: Given the Convention and Zimmer Biomet's failure to proffer any evidence, this Court need not reach this issue.

In brief, the lower court failed to weigh all relevant matters in reaching its decision. *See Macedo*, 693 F.2d at 691.

(1) *The lower court failed to address the policy interests of the United States.*

The lower court's opinion assumes the United States has little interest in this matter, but the evidence indicates the opposite. *See* Opinion, A-12.

The district court misjudged the United States' interests as reflected in the Convention. The United States adopted the Convention as part of its "strong national security interest in opposing corruption and bribery worldwide." Senate Report at 7. To serve those ends, the United States promised all State Parties that United States courts would be open to them to claim compensation for corruption originating from the United States.

Even apart from signing the UN Convention, the United States government has indicated its interest in the exact allegations in this lawsuit. The lower court

however, does not discuss any of the eight actions brought by US authorities, all of which demonstrate a strong public interest in Zimmer Biomet's actions. Two of the actions brought by the Executive Branch addressed the exact same fact pattern: (1) the DOJ's criminal action against Zimmer Biomet in United States federal court and (2) that the SEC's administrative proceeding, both of which are mirror-images of this action.

It does not comport with the stated interests of the United States to bar Mexico from adding one action to that list and to prevent Mexico from bringing its claims in United States courts for the sake of "convenience." The parallel actions by the United States foreclose dismissal for *forum non conveniens*. "It would be incongruous, indeed, if the criminal action and the SEC civil action proceeded in this District while the private civil action was dismissed on *forum non conveniens* grounds." *In re Livent, Inc. Sec. Litig.*, 78 F.Supp.2d 194, 212 (S.D.N.Y. 1999); *see also Terra Firma Invest.*, 725 F.Supp.2d at 443.

> (2) *The lower court failed to accept Mexico's expressed statement that it wants to retain its lawsuit here.*

The lower court's conclusions regarding Mexico's policy interests are particularly troubling, but are discussed fully above.

> (3) *This is a local controversy.*

Zimmer Biomet is headquartered in this District. It orchestrated a world-wide bribery scheme from its headquarters in this District. As demonstrated by the

multiple actions by the SEC and the DOJ, the United States has strong interests in determining Zimmer Biomet's culpability for its action in this District. *See Terra Firma*, 725 F.Supp.2d at 443 ("As to the public factors, there is a legitimate U.S. interest in learning whether Citi, a major American bank, may be liable for fraudulent inducement, and thus subject to substantial damage."); *Bigio v. Coca–Cola Co.*, 448 F.3d 176, 180 (2d Cir. 2006) ("Relatedly, the district court stated that 'Egypt's interest in deciding this controversy is significant,' whereas the suit is primarily over whether a United States company should be liable in damages.") (citation omitted); *Satyam Computer Services, Ltd. v. Venture Glob. Eng'g, LLC*, 2006 WL 6495377, at *7 (E.D. Mich. July 13, 2006), *aff'd*, 233 Fed. Appx. 517 (6th Cir. 2007) ("Second, the court finds that the public interest factors do not weigh in favor of declining jurisdiction. Instead, the court finds that there is sufficient local interest to retain jurisdiction, inasmuch as: VGE is a Michigan limited liability company….").

*(4) Court congestion does not support dismissal.*

The United States clearly understood that it was adding to the burdens of its own courts when it committed under the Convention to allow State Parties to seek compensation in its courts. The convenience of avoiding that obligation does not override the Convention. The Convention's binding provisions do not permit State Parties to avoid the Convention's obligations on the basis of court convenience by

sending them at the request of the corrupt party to the nations victimized by international corruption and bribery.

*(5) The need to apply Mexican law does not justify dismissal.*

The Mexican law at issue is essentially identical to Indiana law. Certainly, Zimmer Biomet has indicated no substantial difficulties. Moreover, the Supreme Court has stated directly that the "need to apply foreign law .... alone is not sufficient to warrant dismissal." *Piper Aircraft Co.*, 454 U.S. at 260 n. 29. The federal courts uniformly reject this factor as a reason to dismiss of *forum non conveniens*. *E.g., Manu Intern., S.A. v. Avon Products, Inc.*, 641 F.2d 62, 67–68 (2d Cir. 1981) ("Proof of foreign law may be a burden in this case, but it is not alone enough to push the balance of convenience strongly in favor of the defendant. The other *forum non conveniens* factors must do that ...."); *Mobil Tankers Co., S. A. v. Mene Grande Oil Co.*, 363 F.2d 611, 615 (3d Cir. 1966) (District Court "gave undue weight to the possible difficulty in the application of foreign law [but this] apprehension appears to be predicated wholly on conjecture." Upon review of Venezuelan Civil Code, court of appeals saw no inherent difficulties.); *DiFederico v. Marriott Intern., Inc.*, 714 F.3d 796, 807 (4th Cir. 2013) ("Assuming without deciding that Pakistan's laws should apply to this case, the district court overstated the associated hardship."); *Mercier*, 981 F.2d at 1357 (Turkish law); *Schexnider v. McDermott Intern., Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987) (Australian law).

The "'need to apply foreign law is not in itself a reason to apply the doctrine of *forum non conveniens*,' and we must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *Manu*, 641 F.2d at 648 (citations omitted).

### D. *The lower court failed to address other issues that should have called for retention of IMSS' action.*

#### (1) *IMSS had to bring suit in this forum, supporting substantial deference.*

Zimmer Biomet did not contest and the lower court did not mention that, prior to its concession to jurisdiction in Mexican courts, Zimmer Biomet was not subject to jurisdiction in Mexican courts. *See* Memorandum in Support, A-36-37; *see also* IMSS Expert, A-426, ¶¶10-14.

In other words, IMSS had no choice but to sue here.

When a plaintiff sues a defendant in its home forum "to obtain jurisdiction" over the defendant, that choice is entitled to "substantial deference." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 74 (2d Cir. 2003); *see also Norex Petroleum Ltd. v. Access Indust., Inc.*, 416 F.3d 146, 155-56 (2d Cir. 2005) (When jurisdiction was "doubtful" in the plaintiffs' homes, the "decision to litigate in New York, where all defendants were amenable to suit (and where some reside or are incorporated) is properly viewed as a strong indicator that convenience, and not tactical harassment of an adversary, informed its decision to sue outside its home

forum."). The *Norex* Court further explained that the district court's "failure to give due consideration to this jurisdictional concern was a key factor informing our decision to vacate and remand the *forum non conveniens* dismissal in *Iragorri v. United Technologies Corp.*" 416 F.3d at 74. The *Iragorri* Court noted:

> Where a U.S. resident leaves her home district to sue the defendant where the defendant has established itself and is thus amenable to suit, this would not ordinarily indicate a choice motivated by desire to impose tactical disadvantage on the defendant. This is all the more true where the defendant's amenability to suit in the plaintiff's home district is unclear.

*Iragorri*, 274 F.3d at 72.

Zimmer Biomet's after-the-fact concession to jurisdiction in Mexico does not moot this factor. IMSS' original choice of forum was not colored by Zimmer Biomet's self-serving concession. "Although a district court may dismiss a complaint on *forum non conveniens* grounds even where the plaintiff had no alternative forum available until the defendants later consented to appear in their preferred forum, the lack of an original alternative forum constitutes a 'legitimate reason' for a foreign plaintiff's choice of a U.S. forum." *Shi v. New Mighty U.S. Trust*, 918 F.3d 944, 950 (D.C. Cir. 2019); (citing, *Schertenleib v. Traum*, 589 F.2d 1156, 1164 (2d Cir. 1978); *Associacao Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 619 (6th Cir. 2018); *Norex*, 416 F.3d at 155–56)).

(2)     *Zimmer Biomet is forum shopping.*

In an opinion cited with approval by this Court, the Second Circuit cautioned that "Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons." *Iragorri*, 274 F.3d at 75. [8] "*Iragorri* warns that district courts must 'arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum.'" *Simmtech Co.*, 634 Fed.Appx. at 64-65.

Zimmer Biomet has several improper reasons why it wants to move this action to Mexico.

To start with, Mexican courts are slow, and dismissal here will cause delay, and most defendants prefer to delay their day in court. Trial in Mexico could take 15 years. IMSS Expert, A-430, ¶41. *See also* S. Zamora, J.R. Cossio, L. Pereznieto, J. Roldán-Xopa, D. Lopez, MEXICAN LAW 187 (Oxford 2004) (Mexican courts "inefficient"); IMSS Expert, A-430, ¶43. Zimmer Biomet proffered no evidence on this issue, but the lower court disagreed with the assessment of IMSS' experts based on conclusions in other district court opinions. Opinion, A-10-11.

---

[8] *E.g., In re Ford Motor Co.*, 344 F.3d at 653.

Instead of seeking convenience and efficiency, Zimmer Biomet wants to "complicate the suit, delay it, and render it more expensive" as a "trial here promises to begin and end sooner than elsewhere …." *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 492 (2d Cir. 1998).

Perhaps more compelling to Zimmer Biomet, the final SEC Order setting out Zimmer Biomet's liability under US law for its subsidiaries' bribery is *res judicata* in this Court. *B & B Hardware, Inc.*, 575 U.S. at 148–49. Mexico is a civil law country—governed by Codes, not *stare decisis*—and therefore, Mexican jurisprudence does not include the concept of *res judicata*, issue preclusion or collateral estoppel. IMSS Expert, A-426, ¶9. Again, the lower court recognized this undisputed fact, but found it immaterial. Opinion, A-11.

In Mexico, Zimmer Biomet would also likely be able to avoid responsibility for the actions of its subsidiary and its agents. Pursuant to a number of international investment treaties, it is extremely difficult for Mexican courts to hold foreign corporations liable for the acts of their Mexican subsidiaries and agents. IMSS Expert, A-426, ¶¶12-14.

Finally, in Mexico, Zimmer Biomet will likely be able to avoid discovery into the international nature of its bribery because Zimmer Biomet's Mexican subsidiary did not pay bribes in other countries. Thus, while evidence of Zimmer Biomet's actions in other countries is admissible to establish that Zimmer Biomet's Mexican

bribes were part of "a larger continuing plan, scheme, or conspiracy," in Mexico, Zimmer Biomet might avoid even producing this evidence, and therefore, might be successful in claiming that its Mexican agents went rogue. E. Cleary, MCCORMICK'S HANDBOOK ON THE LAW OF EVIDENCE § 190, 448-49 (1972) (footnote omitted).

> (3)   *IMSS is not forum shopping and has legitimate reasons for filing suit here.*

As stated by the Supreme Court, in addition to an undue burden from defending itself in this Court, Zimmer Biomet must establish that IMSS lacks a proper reason for its choice of this forum. *Piper Aircraft*, 454 U.S. at 249. Neither Zimmer Biomet nor the lower court even suggest an improper motivation by IMSS, and, of course, all of the reasons Zimmer Biomet wants to avoid suit here constitute a legitimate reason for IMSS' choice.

The level of deference to be afforded IMSS' choice of forum depends on its likely motivations in filing suit. "It is not a correct understanding of the rule to accord deference only when the suit is brought in the plaintiff's home district. Rather, the court must consider a plaintiff's likely motivations in light of all the relevant indications." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74 (2d Cir. 2001). Courts should "give greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons … and diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage." *Id*. "The more that a plaintiff, even a foreign plaintiff, chooses to sue in a United States court for

legitimate reasons, the more deference must be given to that choice." *Bigio,* 448 F.3d at 179.

Absent any suggestion that IMSS filed suit here to harass Zimmer Biomet, dismissal was improper. *DiRienzo*, 294 F.3d at 28 ("[N]o evidence suggests they had an improper motive in bringing suit" in New York.); *Iragorri*, 274 F.3d at 75 ("So far as the record reveals, there is little indication that the plaintiffs chose the defendants' principal place of business for forum-shopping reasons."); *State St. Bank & Tr. Co. v. Inversiones Errazuriz, Limitada*, 230 F.Supp.2d 313, 320–21 (S.D.N.Y. 2002) ("The whole point of these decisions is to place the burden upon the defendant to show that a plaintiff, who files suit outside his district of residence, is doing so for strategic reasons.").

In this case, the relevant considerations (which Zimmer Biomet ignores) call for substantial deference to IMSS' choice.

E.  *The lower court did not adequately weight the private interest factors.*

As to the private interest factors, once again, Zimmer Biomet proffered no evidence to support its assertion that the evidence and witnesses are in Mexico and therefore more available there. The exact contrary is true. The relevant evidence will be far more accessible evidence here.

*(1) The lower court ignores the evidence of Zimmer Biomet's coordinated activities in Warsaw, Indiana.*

The lower court's analysis of the private interest factors limits this case to Zimmer Biomet's Mexican bribes, ignoring the relevance of Zimmer Biomet's bribes in the United States and around the globe. None of that evidence is in Mexico. All of it is in Warsaw. That evidence is particularly relevant to establish Zimmer Biomet's (as opposed to its subsidiary's) responsibility and liability to IMSS. It is only by arbitrarily deeming the evidence of Zimmer Biomet's global conduct irrelevant, that the lower court could conclude "the number of witnesses in Mexico dwarfs those here." Opinion, A-7. It is also notable that the lower court reached this conclusion without any evidence of any kind identifying the relevant witnesses and actors. In fact, Zimmer Biomet did not identify a single witness or document that is not within the control of IMSS or Zimmer Biomet. IMSS has access to IMSS doctors and evidence, and Zimmer Biomet can obtain the documents and testimony from its Mexican agents.

*(2) All of the relevant evidence is in Warsaw Indiana.*

The lower court's analysis omits the important fact that the relevant documentary evidence has already been gathered by Zimmer Biomet in response to the SEC's and DOJ's actions. All of that evidence is available in the United States. Zimmer Biomet's deferred prosecution agreement states that Zimmer Biomet received a reduction in its fine because it had cooperated with federal authorities by

"voluntarily making employees available for interviews, and collecting, analyzing, and organizing *voluminous evidence* and information for the Fraud Section…." A-564 (deferred prosecution agreement; emphasis added). Per the DOJ, "by the conclusion of the investigation, the Company had provided to the Fraud Section *all relevant facts known to it*, including information about individuals involved in the misconduct…." *Id.* (emphasis added).

### (3) There is limited discovery in Mexico.

The lower court also failed to address the undeniable fact that Zimmer Biomet does not want to go to Mexico so it can access *more* evidence. It wants to go to Mexico to avoid evidence of its wrongs. In fact, it is the lack of discovery in Mexico that Zimmer Biomet is clearly counting on to avoid responsibility for its wrongs, if Zimmer Biomet can persuade this Court to move this matter to Mexico.

Under Mexico's limited discovery procedures, Zimmer Biomet might be able to avoid entirely providing any evidence demonstrating that Zimmer Biomet's Mexican agents were acting under Zimmer Biomet's instructions. IMSS Expert, A-428, ¶¶17-18.

In short, there will be far less proof in Mexico than here.

### (4) It is easier to obtain evidence from Mexico for use in the US court than from the US for use in Mexican court.

The lower court also failed to address the undisputed fact that it is easier to obtain evidence from Mexico for use in US court than from the US for use in

Mexican courts. Mexico has a statutory provision similar to 28 U.S.C. § 1782, which allows parties to seek discovery directly in Mexican courts in support of a foreign proceeding. IMSS Expert, A-428, ¶28. Discovery under this statute generally takes 3 to 6 months. *Id*.

If resort to the Hague Convention were necessary, Mexico has a far faster response time to Hague requests than the United States. Mexico's 2014 report on the Hague Convention requests states that Mexico responded to 2 requests in 2-4 months, 7 in 4-6 months, and 2 in 6 months to a year. IMSS Expert, A-428-29, ¶¶29-36. No response took more than a year. On the other hand, Mexico reports that Hague requests from Mexico to the United States usually take more than 16 months. IMSS Expert, A-429, ¶37.

On the other hand, Mexican procedures generally do not allow for discovery, so US response times are basically irrelevant. In addition, Mexican law imposes significant hurdles before a party can initiate a Hague request in the context of a Mexican litigation, so it is more difficult to start the Hague process within Mexico. IMSS Expert, A-429, ¶¶39-40.

## *Conclusion*

In December 2003, representatives of 120 nations met in Merida, Mexico to declare that public corruption is one of the gravest threats to national and international security and to pledge their coordinated efforts to combat such corruption. Ironically, in a matter brought by the host of that historic meeting, the lower court creates a precedent that damages those coordinated efforts and unjustly damages IMSS' critical efforts to prevent bribery affecting its offices.

The lower court's ruling should be reversed, and this action remanded, so that IMSS can have its day in court.

Respectfully submitted,

By: /s/ Mark Maney
Mark Maney
Attorney-in-Charge
Maney & González-Félix PC
712 Main Street, Suite 2100
Houston, Texas 77002
Telephone: 713.806.2500
mmaney@maneylaw.com

ATTORNEYS FOR IMSS

## *Certificate of Rule 32(A) Compliance*

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7). The text of this brief appears in 14-point Garamond Schoolbook font and the footnotes of this brief appear in 12-point Garamond Schoolbook font. All portions of the brief—aside from the Cover Page, Rule 26.1 Disclosure Statement, Table of Contents, Table of Authorities, Signature Block, Certificate of Rule 32(a) Compliance, Certificate of Service, and Certificate of Rule 30(d) Compliance—contain 11,164 words. This certification is based on the word count function of Microsoft Word, which was used to prepare this brief.


DATED: April 26, 2021                    Respectfully submitted,

                                         By: /s/ Mark Maney
                                         Mark Maney
                                         Attorney-in-Charge
                                         Maney & González-Félix PC
                                         712 Main Street, Suite 2100
                                         Houston, Texas 77002
                                         Telephone: 713.806.2500
                                         mmaney@maneylaw.com

                                         ATTORNEYS FOR IMSS

## *Certificate of Service*

On April 28, 2021, I caused a true and correct copy of this document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. All participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

DATED: April 28, 2021                    Respectfully submitted,

By: /s/ Mark Maney
Mark Maney
Attorney-in-Charge
Maney & González-Félix PC
712 Main Street, Suite 2100
Houston, Texas 77002
Telephone: 713.806.2500
mmaney@maneylaw.com

ATTORNEYS FOR IMSS

### *Certificate of Rule 30(D) Compliance*

Pursuant to Circuit Rule 30(d), I hereby certify that this required short appendix contains the documents required by Circuit Rule 30(a).

DATED: April 26, 2021    Respectfully submitted,

         By: /s/ Mark Maney

         Mark Maney
         Attorney-in-Charge
         Maney & González-Félix PC
         712 Main Street, Suite 2100
         Houston, Texas 77002
         Telephone: 713.806.2500
         mmaney@maneylaw.com

         ATTORNEYS FOR IMSS

# REQUIRED SHORT APPENDIX

# REQUIRED SHORT APPENDIX

## TABLE OF CONTENTS

PAGE

Judgment, dated January 5, 2021 (filed January 5, 2021) Dkt. No. 21 ...... A1

Opinion and Order, dated January 5, 2021 (filed January 5, 2021
    (filed January 5, 2021) Dkt. No. 20 .................................. A2

# A1

AO 450 (Rev. 01/09)   Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
for the
## Northern District of Indiana

INSTITUTO MEXICANO DEL SEGURO SOCIAL
    Plaintiff

         v.                   Civil Action No.   3:20-cv-00099

ZIMMER BIOMET HOLDINGS INC
    Defendant

## JUDGMENT IN A CIVIL ACTION

The court has ordered that (*check one*):

☐ the Plaintiff(s),_____recover from the Defendant(s)_____ damages in the amount of _____, plus post-judgment interest at the rate of _____ %

☐ the plaintiff recover nothing, the action is dismissed on the merits, and the defendant recover costs from the plaintiff _____

☒ Other:_____ This case is DISMISSED under forum non conveniens. Defendant Zimmer Biomet Holdings Inc. is ORDERED to agree to accept service in actions brought by IMSS arising from this action in a Mexican court and not contest jurisdiction. Defendant Zimmer Biomet Holdings Inc. is further ORDERED to satisfy a final judgment rendered by a court of Mexico.____

This action was (*check one*):

☐ tried to a jury with Judge _____
presiding, and the jury has rendered a verdict.

☐ tried by Judge _____
without a jury and the above decision was reached.

☒ decided by_ Judge Damon R. Leichty on_ Motion to Dismiss by Defendant_____

DATE:___1/5/2021_____          ROBERT TRGOVICH, CLERK OF COURT
                                   by____ /s/ S. Kowalsky_____
                                          *Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

INSTITUTO MEXICANO DEL SEGURO
SOCIAL,

Plaintiff,

v.                                                      CAUSE NO. 3:20-cv-99 DRL-MGG

ZIMMER BIOMET HOLDINGS, INC.,

Defendant.

<u>OPINION & ORDER</u>

The Instituto Mexicano del Seguro Social (IMSS) manages the purchase of medical supplies for the Mexican government. IMSS alleges that Zimmer Biomet Holdings, Inc. bribed Mexican government officials to facilitate the sale of its medical device products in Mexico. Zimmer Biomet now moves to dismiss this suit on grounds of *forum non conveniens*, saying the case should be litigated in Mexico. The court agrees and grants the motion.

BACKGROUND

IMSS alleges that, from 2008 to 2013, Zimmer Biomet knowingly paid bribes to Mexican government officials to facilitate the sale of its products to and through IMSS. These bribes allegedly facilitated the importation of unregistered medical device products into Mexico. IMSS says bribes occurred through Zimmer Biomet's indirectly-owned subsidiary in Mexico, Biomet 3i Mexico, with Zimmer Biomet personnel traveling into the country to support the scheme, or through Mexican agents who acted as bagmen for passing on bribes to Mexican government officials.

The complaint alleges that Zimmer Biomet engaged in an international bribery scheme orchestrated from its corporate offices in Indiana. The scheme thus included bribes both in the United States and Mexico. IMSS alleges that Zimmer Biomet has entered into deferred prosecution agreements with the U.S. Department of Justice and settlement agreements with the Securities and Exchange Commission regarding these schemes. IMSS asserts that, under Mexican law, it cannot

purchase unregistered medical products and thus wouldn't have purchased medical devices from Zimmer Biomet if it had known of the bribes here. IMSS also claims that, because of the bribery scheme, various contracts from 2008 through the present are voidable.

DISCUSSION

The court may dismiss or transfer a case when considerations of economy and convenience demonstrate another forum is better suited to hear it. *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994). This doctrine of *forum non conveniens* applies "when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)) (quotations omitted); *see Am. Dredging*, 510 U.S. at 447-48.

The court ordinarily defers to the plaintiff's choice of forum, *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 803 (7th Cir. 1997), though a foreign plaintiff's choice deserves less deference, *Piper Aircraft*, 454 U.S. at 256; *Kamel*, 108 F.3d at 803, a turnabout mitigated by the United Nations Convention Against Corruption here. Zimmer Biomet carries the burden of overcoming this presumption favoring a plaintiff's choice, and it is often a "heavy" one. *In re Hudson*, 710 F.3d 716, 718 (7th Cir. 2013); *see Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016) (*forum non conveniens* is an "exceptional" doctrine). A plaintiff's choice of forum shouldn't be disturbed unless the balance of factors tilts strongly in the defendant's favor. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Deb*, 832 F.3d at 806.

The court may dismiss an action under *forum non conveniens* when (1) an alternative forum is available and adequate, and (2) dismissal would serve both the private interests of the parties and the public interests of the forums, *see Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589

F.3d 417, 421, 424 (7th Cir. 2009), though the overriding focus remains convenience, *Piper Aircraft*, 454 U.S. at 241. In rare cases when the plaintiff wants to sue in the defendant's home jurisdiction and the defendant wants to be sued in the plaintiff's home jurisdiction, as here, the court "weigh[s] . . . the relative advantages and disadvantages of the alternative forums" because there is "no prima facie reason to think a plaintiff [is being] discriminated against by being sent to his home court or a defendant [is being] discriminated against by being forced to stay and defend in his home court." *Abad v. Bayer Corp.*, 563 F.3d 663, 671 (7th Cir. 2009).

    A.      *Mexico is an Available and Adequate Alternative Forum.*

    An alternative forum must be available and adequate. *Stroitelstvo*, 589 F.3d at 421. A forum is "available" if "all of the parties are amenable to process and within the forum's jurisdiction." *Id.* This requirement may be satisfied by a party consenting to jurisdiction. *See, e.g.*, *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 867 (7th Cir. 2015) (Hungarian courts available where non-Hungarian party consented to jurisdiction in Hungary); *Stroitelstvo*, 589 F.3d at 421 (Bulgarian courts available when bank headquartered in Chicago with office in Bulgaria consented to jurisdiction in Bulgaria); *In re Factor VIII or IX Concentrate Blood Prods. Lit.*, 484 F.3d 951, 957 (7th Cir. 2007) (forum available when dismissal conditioned on defendant's acceptance of service in U.K.).

    Here, Zimmer Biomet consented to jurisdiction in Mexico through its vice president and associated general counsel. *See Associacao Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 621 (6th Cir. 2018) (declarations that one will accept service in alternative forum are legally binding); *see also Fischer*, 777 F.3d at 867 (relying on declaration by defendant's officer consenting to jurisdiction). Zimmer Biomet says it won't contest service of process in Mexico. To ensure Mexico proves an adequate forum, the court may order Zimmer Biomet to consent to jurisdiction in Mexico, accept service of process, and satisfy a final judgment rendered by a Mexican court. *See In re Factor VIII*, 408 F. Supp.2d 569, 591 (N.D. Ill. 2006), *aff'd*, 484 F.3d at 957 (7th Cir. 2007).

IMSS concedes that Mexican courts are competent to hear complex commercial matters but contests their availability nonetheless, though its analysis seems more aptly aimed at the forum's adequacy. IMSS relies on Mexican attorney Sergio Antonio Linares Pérez who says Mexican courts historically haven't held foreign parents of Mexican corporations liable based on their control of subsidiaries in Mexico. Yet Mr. Pérez concedes that Mexican courts recognize consents to jurisdiction. Because the Mexican courts would have jurisdiction over this matter and the parties are amenable to process within Mexico following Zimmer Biomet's consent, Mexican forums are available.

A forum is "adequate" "when the parties will not be deprived of all remedies or treated unfairly." *Kamel*, 108 F.3d at 803. To find an alternative forum inadequate, the court must conclude that "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Fischer*, 777 F.3d at 867 (quoting *Piper Aircraft*, 454 U.S. at 254). An unfavorable change in law alone doesn't make a forum inadequate. *In re Factor VIII*, 484 F.3d at 956.

José Ramón Cossío Diaz, a former associate justice of the Mexico Supreme Court of Justice and current professor of constitutional law at El Colegio de México, says Zimmer Biomet's consent will be upheld by Mexican courts and that IMSS, as a decentralized body of the Federal Public Administration in Mexico, is subject to Mexico's federal jurisdiction. Based on his reading of the complaint, he says the executed contracts took place under the Law of Acquisitions, Leases and Services of the Public Sector (Law of Acquisitions), and that Article 85 of such law says disputes will be resolved by Mexico federal courts. Ultimately, he opines that "the claims filed by the IMSS against Zimmer Biomet may have been filed, processed and properly resolved with the Mexican competent federal authorities." The court gives this opinion substantial weight in underscoring a Mexican venue's availability and adequacy. *See Kamel*, 108 F.3d at 803 (relying on expert affidavit explaining that Saudi law recognizes consents).

Both the claims under Mexico's Law of Acquisitions (count II) and breach of contract (count III) are asserted under Mexican law, so any remedy would be available in Mexico. IMSS says the remedy for fraud (count I) is the same under American and Mexican law. Justice Cossío Diaz says Mexican courts are adequate: "In my opinion, the Mexican federal courts are qualified and empowered to hear the claims for relief sought by the IMSS, both regarding the compliance with the covenants and everything related to the corruption facts." He says Mexican courts have the power to provide relief under Articles 50 and 60 of the Law of Acquisitions, and that this law also grants agencies the power to rescind contracts administratively when the provider breaches its obligations.

IMSS says the forum is inadequate because Mexican courts would be reluctant to hold Zimmer Biomet accountable for its subsidiary's acts, but the court doesn't equate this type of reluctance with inadequacy. Just because Mexican law or a Mexican court may prove more circumspect about the claims here is a measure of the merits, a measure of standards or weight, not a measure of whether the remedies would be so clearly inadequate such as to be no remedy at all. *See, e.g.*, *Fischer*, 777 F.3d at 861 (finding Hungarian courts adequate and saying "the relief need not be as comprehensive or as favorable as a plaintiff might obtain in an American court"); *In re Factor VIII*, 484 F.3d at 956 (finding British forums adequate though they had less favorable standards of causation). Indiana law would also present obstacles to recovery; for instance, IMSS would need to pierce the corporate veil between Zimmer Biomet and its subsidiary or establishing overwhelming control, but that hurdle wouldn't suggest Indiana law must accordingly be viewed as inadequate.

In sum, as many other courts have held, a Mexican court here is an adequate forum. *See, e.g.*, *Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 933 (7th Cir. 2011); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir. 2003) ("The fact that Mexico provides a wrongful death cause of action, albeit with severe damage caps, makes the country an adequate forum."); *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 383 (5th Cir. 2002) ("We . . . are unwilling to hold as a legal principle that

Mexico offers an inadequate forum simply because it does not make economic sense for [plaintiff] to file this lawsuit in Mexico."). This conclusion supports the case's dismissal in favor of a Mexican forum.

B.     *The Private Interests of the Parties Favor Dismissal.*

The court next weighs the private interests of the parties. *Stroitelsvo*, 589 F.3d at 424-25. Courts weigh the following private interest factors: "(1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; (4) and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008) (quoting *Gilbert*, 330 U.S. at 508).

Mexico has easier access to witnesses. More witnesses reside in Mexico than the United States. IMSS is a Mexican agency, so its witnesses will be materially located in Mexico. IMSS alleges that Biomet 3i was the historically bad actor, and Biomet 3i Mexico is in Mexico. IMSS says the bribery scheme was carried out by unspecified "Mexican agents," thus pointing to Mexico as the better forum. IMSS says the bribes were paid to Mexican government officials who likewise reside in Mexico. To be sure, there will be witnesses from the United States. Zimmer Biomet is an Indiana corporation, and witnesses will likely include unnamed Zimmer Biomet personnel. But the number of witnesses in Mexico dwarfs those here.

IMSS counters that Zimmer Biomet hasn't provided names of specific witnesses in Mexico, but Zimmer Biomet wasn't required to do so. *See Piper Aircraft*, 454 U.S. at 258 (defendants need not "submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum. . . . Requiring extensive investigation would

defeat the purpose of their motion"). In the same vein, IMSS hasn't identified any witnesses in Indiana. The nature of the allegations here clarifies the scope of potential witnesses.

Similarly, the likely relevant documentary evidence favors a Mexican forum. The alleged bribes were made to Mexican officials by Mexican agents, so any documentary evidence (if any exist of such a scheme) is more likely in Mexico. IMSS's and Biomet 3i's documents are likewise in Mexico. Much of the relevant documents and testimony will be in Spanish. *See Fischer*, 777 F.3d at 870 ("it seems obvious that otherwise heavy translation burdens will be greatly reduced if the case were litigated in Hungary"). Transportation of this evidence here and translation would be expensive. *See Stroitelstvo*, 589 F.3d at 425 ("transporting all of the evidence and witnesses to Chicago would be unnecessarily expensive" and "[t]ranslating all of the Bulgarian discovery documents into English for a U.S. court would also be costly").

That said, the SEC and DOJ investigation reports of Zimmer Biomet in the English language likely contain evidence that could be used in IMSS's suit, though the reports seem fewer in number and secondary in relevance to documentary evidence in Mexico specific to the alleged bribery activity. The documents central to this dispute are the contracts in Spanish entered into between IMSS and Biomet 3i Mexico, or the evidence concerning bribes for these medical device sales. Mr. Pérez opines that discovery requests would be more quickly transported from Mexico to the United States than *vice versa* given response times under the Hague Convention, but that international exchange and burden are inherent prerequisites to discovery in this case whether venued here or there.

IMSS says Zimmer Biomet is trying to avoid discovery because in Mexico parties are required to utilize exclusively the evidence in their possession at the time of filing suit, whereas a court here will give the parties the vehicle of discovery to develop more evidence. Arguments that the United States provides more extensive discovery than alternative forums have been rejected in

the *forum non conveniens* analysis when the other forum is adequate. *See, e.g.*, *Piper Aircraft*, 454 U.S. at 252 n.18 (noting that "discovery is more extensive in America than in foreign courts"); *GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*, 64 F. Supp.3d 1179, 1193 (N.D. Ill. 2014) (rejecting argument that Germany provided inadequate forum because of Germany's limitations on discovery). Moreover, even IMSS recognizes that the judicial system in Mexico permits parties to use evidence discovered after the complaint is filed, particularly when the plaintiff lacked knowledge it existed before.

The ability to secure attendance of witnesses favors dismissal. The COVID-19 pandemic is common to both Mexico and the United States, which may prevent voluntary testimony due to travel restrictions. Accordingly, outside technological alternatives to in-person questioning, easing the burdens of travel has greater importance, and Mexico is better suited for that than the United States given the location of witnesses. Mexican courts likewise may compel live testimony from witnesses located in Mexico, whereas the United States subpoena power is powerless for Mexican citizens. Federal Rule of Civil Procedure 45(b)(2) authorizes subpoenas for witnesses located in the United States, and 28 U.S.C. § 1783 authorizes service of subpoenas for United States nationals or residents located in a foreign country. IMSS representatives, Biomet 3i employees, and Mexican government officials who received bribes are unlikely to fall within the ambit of this otherwise facile service system. Sure, issues may arise with witnesses traveling from the United States to Mexico; but because most witnesses will be in Mexico, this proves the lesser concern. The costs of travel also will likely be less if trial is in Mexico.

The court has weighed additional factors. IMSS's claims are rooted in Mexican law, the contract was between Mexican parties, and the injury took place in Mexico. Even here then, the case will likely require knowledge and application of Mexican law. *See Kamel*, 108 F.3d at 805 (Indiana

uses "place of injury" for tort choice-of-law and a "most significant relationship" test for contract choice-of-law). On balance, a Mexican court is better suited to apply such law.

IMSS argues that Zimmer Biomet is forum shopping and trying to delay trial and avoid application of *res judicata*. *See, e.g., Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001) ("Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of similar forum-shopping reasons."). That said, forum shopping "ordinarily should not enter into a trial court's analysis of the private interests." *Piper Aircraft*, 454 U.S. at 252 n.19. Indeed, "[i]f the defendant is able to overcome the presumption in favor of plaintiff by showing that trial in the chosen forum would be unnecessarily burdensome, dismissal is appropriate—regardless of the fact that defendant may also be motivated by a desire to obtain a more favorable forum." *Id.* Accordingly, IMSS's argument regarding Zimmer Biomet's forum shopping isn't altogether persuasive here, given the overwhelming private interests that are promoted by a Mexican venue.

IMSS says Zimmer Biomet wants to delay trial. *See, e.g., Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 492 (2d Cir. 1998) (considering defendant's motive to delay). Attorney Pérez says Mexican courts are slower than United States courts in executing cases, and trial in Mexico could take as many as 15 years; but he bases this estimate on his own experience without the support of sound empirical research. Moreover, it seems soundly undercut by other authorities, *see DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 797-98, 801 (5th Cir. 2007) (discrediting claim that defendant sought to move trial to Mexico for delay); *see also* ECF 17-1 ¶ 41 (conceding that the average dispute in Mexico takes four years to resolve, including appeals), or by procedures decidedly shorter than the federal system in the United States (*e.g.*, appeal submission). It also

ignores that Mexico accepts and to some extent encourages alternative dispute resolution, so a case may be resolved without a trial. Any delay from COVID-19 would occur in either country.

IMSS next says Zimmer Biomet wants to avoid application of *res judicata* regarding the SEC cease-and-desist order and DOJ deferred prosecution agreement. To be sure, the SEC and DOJ documents might be offered as evidence in Mexico, given Mexico's evidence rules, but these documents wouldn't likely trigger *res judicata* rules here in the United States such that the parties have truly lost any benefit merely because Mexico doesn't recognize the doctrine at all, if correct. The issue here is a specific breach of contract and fraud. The SEC and DOJ proceedings didn't deal with this specific breach of contract and fraud allegation.

That said, though the court views IMSS's choice here favorably, particularly because it is Zimmer Biomet's home jurisdiction, *see Shi v. New Mighty U.S. Trust*, 918 F.3d 944, 950 (D.C. Cir. 2019); *Stryker*, 891 F.3d at 619; *Reid-Walen v. Hansen*, 933 F.2d 139, 1395 (8th Cir. 1991), the private interest factors tilt strongly toward dismissal.

C.    *The Public Interest Factors Favor Dismissal.*

The court next considers the public interest factors. These factors include "(1) the administrative difficulties stemming from court congestion; (2) the local interest in having localized disputes decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Stroitelstvo*, 589 F.3d at 425.

Administrative congestion remains a reality in either forum. That said, Mexican courts would face a lesser burden in obtaining U.S. documents and translating them into Spanish than the opposite, particularly because most evidence exists in Mexico. COVID-19 has made transportation more difficult, though this is common in both forums, and both forums have slowed their judicial

operations in response. According to Mr. Pérez, this district has about one-third the caseload of its Mexican counterpart, which based on cold statistics alone might suggest a more convenient forum here but for the practical administration and conduct of discovery.

Furthermore, Mexico has a much greater interest in this litigation. IMSS, a Mexican government agency, alleges violations of Mexican law from the sale of medical devices in Mexico that bribes of Mexican customs officials facilitated. The contract at issue was formed in Mexico. Mexican courts have an inherent interest in enforcing Mexican law, in hearing disputes regarding its own government, and in hearing disputes regarding corruption of Mexican officials. Indeed, it would be a rare case in which Mexico had any greater interest to hear and decide a case than this one.

To be sure, Zimmer Biomet is headquartered in Indiana and its so-alleged worldwide bribery scheme was orchestrated here, but Indiana isn't the real focus of this litigation. No person or entity in Indiana is alleged to have been harmed. Though the United States has an interest in upholding international law norms, *see Fischer*, 777 F.3d at 871, Mexico's interest in enforcing its own law and rooting out corruption in its own government is much greater. *See, e.g., Stroitelstvo*, 589 F.3d at 425 ("Bulgaria has an equal if not greater interest in guarding against the extortion of its own businesses").

Mexican law governs this dispute, with IMSS alleging violations of Mexico's Law of Acquisitions and breach of contract under Mexican law. The fraud claim likely requires application of Mexican law.[1] This favors dismissal. *See, e.g., Fischer*, 777 F.3d at 871 ("a Hungarian court would be far better able to apply its own law than any United States court would be"); *Abad*, 563 F.3d at 671 (affirming dismissal in part because "an Argentine court is the more competent maker of Argentine

---

[1] Indiana follows the *lex loci delicti* doctrine, applying the law of the place where the tort is committed. *See Allen v. Great Am. Res. Ins. Co.*, 766 N.E.2d 1157, 1164 (Ind. 2002). A tort is said to occur "in the state where the last event necessary to make an actor liable for the alleged wrong takes place." *Id.* The "last event" necessary to establish a fraud claim is injury, *id.* at 1164-65, and the injury here allegedly occurred in Mexico. So, on this preliminary record, the case would likely demand the application of Mexican law.

law"); *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 755 (7th Cir. 2008) ("a Japanese court is more at home with Japanese law and Japanese firms than an American court would be"). This is especially true when the foreign law is a civil law system—like Mexico's—as opposed to the common law system used here. *See Fischer*, 777 F.3d at 871 ("The application of foreign law—particularly that of a civil law system—favors dismissal in favor of a Hungarian forum.").

A jury here is highly attenuated from the incidents alleged in this litigation. Indeed, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Am. Dredging Co.*, 510 U.S. at 448 (quoting *Gilbert*, 330 U.S. at 508). The only link of this litigation to this district is Zimmer Biomet's headquarters here. There are much stronger ties to Mexico. *See U.S.O. Corp.*, 547 F.3d at 755 ("the local interest is that of Japan; to burden Americans with jury duty to resolve an intramural Japanese dispute would be gratuitous"). The public interest factors thus overwhelmingly support this case's dismissal in favor of a Mexican venue.

D. *The United Nations Convention Against Corruption Treaty Does Not Supersede the Forum Non Conveniens Doctrine.*

IMSS subverts the *forum non conveniens* doctrine by arguing that the United States and Mexico signed the superseding United Nations Convention Against Corruption treaty. *See* United Nations Convention Against Corruption (Dec. 9, 2003) (UNCAC).[2] This treaty requires each signatory state "in accordance with its domestic law" to "[t]ake such measures as may be necessary to permit another State Party to initiate civil action in its courts to establish title to or ownership of property acquired through the commission of an offence established in accordance with this Convention" or "to order those who have committed offences established in accordance with this Convention to pay compensation or damages to another State Party that has been harmed by such offences." *Id.* Art. 53.

---

[2] *See* https://www.unodc.org/documents/treaties/UNCAC/Publications/Convention/08-50026_E.pdf.

No court has addressed whether UNCAC precludes the operation of *forum non conveniens*. The court first examines the treaty's text in context. *See Abbott v. Abbott*, 560 U.S. 1, 10 (2010). IMSS is a "State Party," this is a "civil action," IMSS is seeking to establish ownership of property, and IMSS says Zimmer Biomet acquired property through bribery—a corrupt act under UNCAC. That said, by its express terms, the treaty makes IMSS's right to bring suit subject to U.S. "domestic law." Nothing within its plain language seeks to accomplish the opposite goal of undoing U.S. domestic law in such a way as to secure in every case the right to bring suit here, not least in a case where Mexico has a manifest interest in protecting its government from alleged foreign corporate influence.

In addition, UNCAC only requires United States courts to "take such measures as may be necessary" for another state party to initiate an action. IMSS had that right and exercised that right—consistent with UNCAC. IMSS filed suit here, and the court heard its concerns initially to determine the proper venue for further litigation. In applying *forum non conveniens*, the court hasn't interfered with IMSS's ability to commence an action here.

The *forum non conveniens* analysis requires that there be an alternative forum before dismissal, ensuring that any aggrieved party has a potential remedy for an alleged violation. Safeguards ensure IMSS has a forum to bring suit. In other words, it isn't "necessary" for Mexico to bring suit here to enforce its rights.

Courts interpreting similar treaty provisions have held likewise. *See, e.g.*, *In re Bridgestone*, 190 F. Supp.2d 1125, 1136 (S.D. Ind. 2002) (treaty between U.S. and Venezuela required only that "expatriate U.S. nationals and treaty nationals residing in their home countries are entitled to the same deference on their choice of forum, with the consideration that suing in a United States forum while residing in a foreign country is less likely to be convenient"), *aff'd* 344 F.3d 648, 653 (7th Cir. 2003) (calling analysis "reasoned and responsible"); *see also Blanco v. Blanco*, 997 F.2d 974, 981 (2d Cir.

1993) ("when a treaty with a foreign nation accords its nationals access to our courts equivalent to that provided American citizens, identical *forum non conveniens* standards must be applied to such nationals by American courts"). The court has followed UNCAC's mandate here; still, *forum non conveniens* remains a proper subject for deliberation under federal law. Deciding that issue protects "U.S. courts from a glut of foreign cases while continuing to respect our treaty obligations." *In re Bridgestone*, 190 F. Supp.2d at 1136.

CONCLUSION

With Zimmer Biomet's consent, Mexico proves an available and adequate alternative forum for this litigation, and both the private and public interest factors favor trial in Mexico. Because the court dismisses the action under *forum non conveniens*, the court doesn't address Zimmer Biomet's arguments that IMSS's complaint should be dismissed for failure to state a claim or failure to plead with particularity.

Accordingly, the court GRANTS Zimmer Biomet's motion to dismiss (ECF 13) under *forum non conveniens* and, to ensure the availability of Mexico's court and consistent with Zimmer Biomet's declaration, ORDERS Zimmer Biomet to agree to accept service in actions brought by IMSS arising from this action in a Mexican court and not to contest jurisdiction and ORDERS Zimmer Biomet to satisfy a final judgment rendered by a court of Mexico. With the case so dismissed, this order terminates it.

SO ORDERED.

January 5, 2021                                         *s/ Damon R. Leichty*
                                                        Judge, United States District Court